IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAN SCHMIDT,
    Plaintiff,

vs.                                    Case No.: 3:13cv460/MCR/EMT

FLORIDA FIRST DISTRICT
COURT OF APPEAL, et al.,
    Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC"), initiated this civil rights action under 42 U.S.C. § 1983 on August 7, 2013 (*see* doc. 1 at 13). Leave to proceed in forma pauperis has been granted (*see* doc. 9). Pending is Plaintiff's Second Amended Complaint (doc. 27).

I.    BACKGROUND[1]

Plaintiff names three Defendants in the Second Amended Complaint: the Florida First District Court of Appeal ("First DCA"), the Florida Supreme Court, and the State of Florida. Plaintiff alleges that on November 12, 2009, while housed at Santa Rosa Correctional Institution, he appealed to the First DCA an order entered by the Circuit Court in and for Bay County, Florida, in Case No. 94-788, denying a motion for post-conviction relief filed by Plaintiff under Rule 3.850 of the Florida Rules of Criminal Procedure.[2] Plaintiff states that in December of 2009, while the

---

[1] The facts set forth in this part of the Report are derived from the "Statement of Facts" section of the complaint (doc. 27 at pages 8–13, as numbered by Plaintiff and by the court's electronic docketing system). Pinpoint cites to the pages of the complaint are not included herein unless facts are quoted verbatim or such cites are otherwise warranted.

[2] Plaintiff states, and records of the Bay County Clerk of Court confirm, that he was convicted of one count of robbery in Case No. 94-788 (doc. 27 at 8; *see also* http://baycoclerk.com/, case search (felony) for case number 94000788CFMA).

appeal was pending, he filed a notice of change of address with the First DCA, indicating that he had been transferred to a work release center in Gainesville, Florida.

Plaintiff states that on February 3, 2010, he completed the imprisonment portion of the twenty-five-year split sentence imposed for the robbery conviction in Case Number 94-788, and he began serving the remainder of his sentence on mandatory conditional release supervision. He alleges that one week later, on February 10th, he sent to the First DCA a second notice of change of address, indicating that he was residing in Panama City, Florida.

Plaintiff states that on May 10, 2010, the First DCA affirmed per curiam and without a written opinion the trial court's denial of his Rule 3.850 motion and, on the following day, issued an order to show cause why sanctions should not be imposed against Plaintiff—to possibly include a prohibition against Plaintiff's appearing pro se in the First DCA in the future—due to Plaintiff's appearing approximately forty-six times in the First DCA since 1994 and substantially interfering with the administration of justice. Plaintiff alleges he did not receive a copy of the First DCA's per curiam affirmance or order to show cause.[3]

Continuing, Plaintiff states that on August 5, 2010, the First DCA issued an order imposing sanctions and noted therein, in part, that Plaintiff had failed to respond to the order to show cause and, correspondingly, failed to show cause why sanctions should not be imposed. The sanctions imposed by the First DCA included a requirement that any future filings by Plaintiff in the First DCA, in which he appears as an appellant or petitioner, be submitted by a good-standing member of the Florida Bar and that Plaintiff's failure to comply with this requirement of the sanctions order would result in dismissal of the offending case(s). Additionally, the First DCA directed its clerk of court to return to Plaintiff, unfiled, any pro se pleading he submitted, and in doing so to reference the order imposing sanctions.

Plaintiff claims he did not become aware of the order imposing sanctions until approximately September 2010, when he was served with a copy of a lawsuit filed in the Circuit Court in and for

---

[3] Plaintiff explains later in the complaint that he called the clerk of court for the First DCA and was informed that the clerk had received his first notice of change of address (advising of a Gainesville address), but not his second (advising of a Panama City address), and thus the per curiam affirmance and order to show cause were mailed to Plaintiff at the work release center in Gainesville and returned unopened (Plaintiff does not state when he called the First DCA, but the facts alleged in the complaint suggest that he called months after the affirmance and order to show cause issued).

Case No.: 3:13cv460/MCR/EMT

Bay County, Florida, by Portside Condominium Homeowners Association ("PCHA"). He states that the copy of the lawsuit with which he was served included a copy of the First DCA's order imposing sanctions.[4] Plaintiff appears to allege that the trial court in the PCHA case issued an injunction and that he wished to appeal the court's issuance of the injunction, but he was unable to do so because he could not appear pro se in the First DCA due to the filing restriction.

      Plaintiff complains that he was denied notice and an opportunity to be heard prior to the First DCA's imposition of sanctions and, had he been provided such notice and opportunity, he would have been able to establish that the sanctions are unconstitutional because: (1) none of his forty-six prior actions were—or were deemed—frivolous; (2) a "retrospective determination [as to frivolity] is barred by the finality doctrine" and violates his rights to due process and equal protection; (3) he "won" some of the forty-six prior cases, including "a few of them against Defendant First DCA"; (4) he would "be the first person in history barred in part for winning cases in and against a court as a sanction"; and (5) that even if sanctions were warranted, something Plaintiff does not concede, they should have been limited to appeals or petitions concerning his conviction in Case No. 94-788, as opposed to the broad filing restriction that was imposed (doc. 27 at 10). Similarly, Plaintiff asserts that had he timely received a copy of the First DCA's per curiam affirmance, he would have been able to timely file a motion for rehearing *en banc* and for a written opinion, certify a conflict to the Florida Supreme Court, argue that per curiam affirmances are improper, and argue that the First DCA's decision conflicts with clearly established law of the United States Supreme Court. He suggests he would ultimately have been able to establish that the trial court erred in denying his Rule 3.850 motion and, presumably, have been able to have his robbery conviction overturned based on newly discovered evidence.

      Plaintiff additionally alleges that in 1996 the First DCA vacated his sentence in Case No. 94-788 and remanded the case for resentencing, but he was never resentenced.

---

[4] Plaintiff does not specifically state that he was also served with a copy of the First DCA's per curiam affirmance when he was served with the PCHA lawsuit, but he claims he "discovered the existence" of both the affirmance and the order imposing sanctions at the same time (that is, "sometime in September ([Plaintiff] believes) of 2010") (doc. 27 at 9). It is thus unclear how Plaintiff discovered the existence of the per curiam affirmance.

Case No.: 3:13cv460/MCR/EMT

In the remaining portion of the "Statement of Facts" section of the complaint, Plaintiff details multiple unsuccessful efforts he made to have the First DCA's order imposing sanctions vacated, which efforts largely consisted of filings submitted to the Florida Supreme Court (*see* doc. 27 at 11–13).

Plaintiff brings numerous claims against the various Defendants in this action, including claims under the First Amendment, in which he alleges he was denied access to the courts and an opportunity to petition the government for redress of grievances; Fifth Amendment, in which he alleges he was denied due process; Sixth Amendment, in which he alleges he was deprived of the right to counsel and to "criminal, judicial process"; Eighth Amendment, in which he alleges he was subjected to cruel and unusual punishment; Thirteenth Amendment, in which he alleges he was subjected to involuntary servitude; and Fourteenth Amendment, in which he alleges he was denied due process and equal protection (*see* doc. 27 at 14).

As relief, Plaintiff seeks a far reaching declaratory judgment declaring: (1) that all "orders, judgments, mandates and the like" of the First DCA and Florida Supreme Court are void, and (2) that Plaintiff's constitutional rights were violated because (a) he was never resentenced as ordered by the First DCA in 1996; (b) he was not provided notice or an opportunity to be heard prior to the First DCA's imposition of sanctions; (c) the First DCA erroneously classified his forty-six prior actions as frivolous; (d) the First DCA did not provide "notice and an opportunity to litigate that issue at the time the appellate proceeding was pending"; (e) the First DCA "hid[] behind a mere denial and/or PCA without opinion by making no findings of fact and conclusions in law to support its opinion that the issue and/or claim had raised [sic] was meritless or frivolous"; (f) per curiam affirmances are unconstitutional, and the First DCA issued one or more such affirmances in Plaintiff's case(s); (g) the First DCA (and/or other Defendants) prevented Plaintiff from seeking meaningful discretionary review in the Florida Supreme Court, certiorari review in the United States Supreme Court, and federal habeas review in a United States District Court; (h) Plaintiff was forced to exhaust all available state remedies to try to "obtain relief that was already ordered [presumably, the resentencing]"; and (i) Plaintiff was forced to serve "a vacated and void sentence, which was exacerbated by the imposition of sanctions" (doc. 27 at 15–17). Plaintiff also seeks injunctive relief, requiring that: (1) he be resentenced as ordered by the First DCA in 1996, (2) the First DCA vacate

its order imposing sanctions, (3) the First DCA and the State of Florida be precluded from "ever" seeking or imposing sanctions against Plaintiff "based on any prior appeal, motion, or petition unless a written opinion was filed making findings of fact and conclusions of law to support its position," (4) the Florida Supreme Court promulgate a rule of procedure to enable "past, present, and future litigants to dissolve injunctions unconstitutional injunctions [sic] rendered that are similarly situated as Plaintiff," and (5) the Florida Supreme Court "discontinue authorizing state appellate courts from utilizing the PCA without opinion rule and mandating that findings of fact and conclusions in law be provided to all actions filed in the appellate courts by enactment of a new rule echoing the same" (*id*. at 15–16). Lastly, Plaintiff seeks compensatory damages, in an as-yet undetermined amount, from all Defendants, jointly and severally; punitive damages, in an as-yet undetermined amount; costs and fees; and any other relief the court deems equitable (*id*. at 16–18).

II.  DISCUSSION

The court reviews complaints of prisoners who proceed in forma pauperis pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires dismissal if the court determines the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989); Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (a case is frivolous when it appears that the plaintiff has little or no chance of success). In addition, "federal courts are duty bound to consider their subject matter jurisdiction sua sponte." Burr & Forman v. Blair, 470 F.3d 1019, 1035 n.38 (11th Cir. 2006). Thus a court must first evaluate whether it has subject matter jurisdiction, and it must sua sponte dismiss a case if it determines that subject matter jurisdiction is lacking. *See* Jackson v. Farmers Ins. Grp./Fire Ins. Exch., 391 F. App'x 854, 856 (11th Cir. 2010)[5]; Fed. R. Civ. P. 12(h)(3). For the following reasons, the undersigned concludes that this action has little or no chance of success and thus its dismissal as frivolous is warranted.

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2 (2005).

Case No.: 3:13cv460/MCR/EMT

As an initial matter, although Plaintiff states he seeks declaratory and injunctive relief, in essence he asks this court to issue what amounts to writs of mandamus directing the state courts to take a multitude of actions. Under similar circumstances—namely, where an FDOC inmate brought a federal civil rights action seeking injunctive relief against judges of the Florida Second District Court of Appeal ("Second DCA"), the State of Florida, the Florida Attorney General, and a State Attorney, alleging a violation of his constitutional rights to due process, equal protection, and access to courts with respect to a habeas petition he filed challenging a 1991 conviction for dealing in stolen property—the Eleventh Circuit noted:

> Federal courts have no jurisdiction to issue writs of mandamus directing a state court and its judicial officers in the performance of their duties where mandamus is the only relief sought. Moye v. Clerk, DeKalb County Superior Court, 474 F.2d 1275, 1276 (5th Cir. 1973). Because the defendants named in Bailey's complaint are not officers or employees of the United States or any agency thereof, the district court lacked jurisdiction to grant the only relief Bailey requested. Accordingly, Bailey's complaint was properly dismissed as frivolous. See Carroll, 984 F.2d at 393.

Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) (footnote omitted).

Thus, this court has no jurisdiction to issue writs of mandamus directing the Florida Supreme Court, the First DCA, or their judicial officers to perform the actions Plaintiff requests here, such as those related to orders and judgments rendered in Plaintiff's case(s), the First DCA's imposition of sanctions against Plaintiff, the First DCA's issuance of per curiam affirmances without written opinions, and the state courts' rules of procedure. That Plaintiff also seeks monetary relief in this action is of no moment. All of the relief he seeks is from state officials, not federal officials. See, e.g., Lawrence v. Miami–Dade County State Att'y Ofice, 272 F. App'x 781, 781 (11th Cir. 2008) ("Because the only relief Lawrence sought was a writ of mandamus compelling action from state officials, not federal officials, the district court lacked jurisdiction to grant relief and did not err in dismissing the petition.") (footnote omitted). For these reasons, dismissal for lack of subject matter jurisdiction is warranted. See Carroll, 984 F.2d at 393; Bailey, 226 F. App'x at 924.

The Rooker-Feldman doctrine[6] should also apply in this case to preclude the court from assuming subject matter jurisdiction. The Rooker-Feldman doctrine provides that federal district courts have "no authority to review final judgments of a state court . . . ." Nicholson v. Shafe, 558 F.3d 1266, 1271 (11th Cir. 2009) (quoting Feldman, 460 U.S. at 482, 103 S. Ct. 1303); see Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam) ("The Rooker–Feldman doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.").

The Supreme Court has reiterated that the scope of the doctrine is narrow and is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "We determine the applicability of Rooker–Feldman by 'adhering to the language in Exxon Mobil delineating the boundaries of the Rooker–Feldman doctrine.'" Vasquez v. YII Shipping Co., 692 F.3d 1192, 1196 n.1 (11th Cir. 2012) (brackets deleted) (quoting Nicholson, 558 F.3d at 1274). Thus, following Exxon Mobil, the Rooker–Feldman doctrine applies when "(1) the success of the federal claim would 'effectively nullify' the state court judgment, or . . . (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1262–63 (11th Cir. 2012) (quoting Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam)). Even if a claim satisfies these requirements, or in other terms the claim is "inextricably intertwined" with the state court's judgment, the Rooker-Feldman doctrine does not apply if the plaintiff had no "reasonable opportunity to raise his federal claim in state proceedings." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001) (quoting Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996)). The Rooker–Feldman doctrine may bar claims for damages, injunctive relief, and declaratory relief. See Scott v. Frankel, 562 F. App'x 950 (11th Cir. 2014); Paletti v. Yellow Jacket Marina, Inc., 395 F. App'x 549 (11th Cir. 2010).

---

[6] Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

Case No.: 3:13cv460/MCR/EMT

Here, Plaintiff commenced this federal action on August 7, 2013 (*see* doc. 1 at 13), well after the First DCA's per curiam affirmance on May 10, 2010, and imposition of sanctions on August 5, 2010.[7] Thus the state proceedings had ended for purposes of the Rooker-Feldman doctrine. Moreover, it is clear that Plaintiff lost in state court and that he now challenges the state courts' judgments and asks this court to declare those judgments void and to award other relief. If Plaintiff were to succeed here, the success of his federal claims would effectively nullify the state courts' judgments. Similarly, his federal claims in this action succeed only to the extent that the state courts wrongly decided the issues. Finally, Plaintiff had a reasonable opportunity to raise his federal claims in the state proceedings. He acknowledges that, albeit unsuccessfully, he challenged the First DCA's per curiam affirmance of the denial of his Rule 3.850 motion and also its imposition of sanctions against him for being a vexatious filer. For these reasons, application of the Rooker-Feldman doctrine also results in the conclusion that the court lacks subject matter jurisdiction over Plaintiff's claims and thus that dismissal on this ground is warranted.

In addition, Eleventh Amendment immunity should apply to bar Plaintiff's claims.[8] Pursuant to the Eleventh Amendment a state may not be sued in federal court for damages or equitable relief unless it waives its sovereign immunity, its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment, or the suit seeks prospective injunctive relief to prevent an ongoing violation of the federal constitution against a state official in his official capacity. *See* Frew

---

[7] Plaintiff's claims raised in the instant complaint pertain to the First DCA's per curiam affirmance and imposition of sanctions. Nevertheless, the court notes that the PCHA litigation had also concluded prior to Plaintiff's initiation of the instant action. *See* http://baycoclerk.com/, case search (circuit civil) for case number 10002645CA (styled Portside Condominium Homeowners Assoc., Inc. v. Daniel K. Schmidt, et al.) (reflecting trial court's entry of a final judgment and permanent injunction on July 18, 2011 (and denial of post-judgment motions for rehearing on September 2, 2011, and for leave to amend and for new trial on October 20, 2011), as well as the Florida Supreme Court's order dismissing a writ of mandamus on July 5, 2012, and denying a motion for rehearing and relief on September 11, 2012); *see also* United States v. Berrojo, 628 F.3d 368 (5th Cir. 1980) (stating that "[t]he doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it.").

[8] Immunity from suit under the Eleventh Amendment "is in the nature of a jurisdictional bar," and it "should be decided at an early stage" to protect the sovereignty of the States and its agents by sparing them "the indignity of being haled into federal court by private litigants." Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot., 91 F.3d 1445, 1448 (11th Cir. 1996). While this "jurisdictional bar" can be waived, and courts need not raise it sua sponte, McClendon v. Ga. Dep't of Community Health, 261 F.3d 1252, 1257 (11th Cir. 2001), given the essence of Plaintiff's complaint it is apparent that Plaintiff cannot avoid this immunity defense. Thus the court concludes that sua sponte application of Eleventh Amendment immunity is warranted here.

Case No.: 3:13cv460/MCR/EMT

v. Hawkins, 540 U.S. 431, 437, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55–57, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908); Hans v. Louisiana, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890).  This immunity from suit extends to "arms of the State,"  including state courts.  Kaimowitz v. Florida Bar, 996 F.2d 1151, 1155 (11th Cir. 1993); *see also* Caffey v. Alabama Supreme Court, 469 F. App'x 748, 751 (11th Cir. 2012) (citing Kaimowitz, 996 F.2d at 1155).  Here, none of the exceptions to Eleventh Amendment immunity apply.  The State of Florida has not waived its sovereign immunity, and Congress has not abrogated the State's Eleventh Amendment immunity for claims brought pursuant to § 1983; additionally, Defendants are not state officials and "Ex parte Young . . . does not permit suit against state agencies or the state itself, even when the relief is prospective."  Eubank v. Leslie, 210 F. App'x 837, 844 (11th Cir. 2006).  *See* Williams v. Robbins, 153 F. App'x 574, 576 (11th Cir. 2005) (citing Schopler v. Bliss, 903 F.2d 1373, 1379 n.2 (11th Cir. 1990)).  Consequently, the Eleventh Amendment would bar Plaintiff's claims against the State of Florida, the First DCA, and the Florida Supreme Court because the State and its arms are immune from suit under the Eleventh Amendment.[9]

---

[9] The court also notes, if subject matter did exist, the likely applicability of absolute judicial immunity and Heck v. Humphrey, 512 U.S. 477, 481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), to bar Plaintiff's claims.
  First, Plaintiff does not name as Defendants individual judicial officials of the Florida Supreme Court or the First DCA.  Nevertheless, even if Plaintiff's demands were read as being directed to them, the state judges would be entitled to absolute judicial immunity for damages because the actions of which Plaintiff complains were actions taken in the judges' judicial capacities and clearly were not made in the absence of all jurisdiction.  *See* Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam) (absolute judicial immunity is available to judges for all actions taken in their judicial capacity, except where they act in the clear absence of all jurisdiction).  Judicial immunity likewise should be available with respect to Plaintiff's claims for injunctive and declaratory relief.  *See* 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.").  Plaintiff cannot establish entitlement to declaratory relief because there were adequate remedies at law for the violations he alleges. Bolin, 225 F.3d at 1242.  Indeed, Plaintiff availed himself of such remedies, both with respect to his criminal case, *see, e.g.*, Schmidt v. McKeithen, No. 5:10cv331/RH/EMT, 2011 WL 334182, at *1 (N.D. Fla. Jan. 11, 2011) *report and recommendation adopted*, No. 5:10cv331/RH/EMT, 2011 WL 334215 (N.D. Fla. Jan. 31, 2011) (setting forth the post-conviction procedural history for Bay County, Florida, Case No. 94–788), and the imposition of sanctions against him. *See* Schmidt v. State, 86 So. 3d 1114 (Fla. 2012) (Florida Supreme Court's order directing that "[t]he original petition seeking belated discretionary review is hereby granted and a new case styled Daniel Schmidt v. State of Florida, Case No. SC 12–408, has been set up as a notice to invoke discretionary jurisdiction which is seeking review of the [First DCA's] order [imposing sanctions] dated August 5, 2010.").  As there were adequate remedies at law with respect to the Florida courts' decisions at issue in Plaintiff's complaint, Plaintiff would not be entitled to declaratory or injunctive relief

For all of the foregoing reasons, the court concludes that Plaintiff would have little or no chance of success on his claims in the Second Amended Complaint. Accordingly, the court recommends that the Second Amended Complaint be dismissed as frivolous. Carroll, 984 F.2d at 393.

Additionally, or in the alternative, the court notes that this lawsuit should be barred under 28 U.S.C. § 1915(g), the "three strikes" provision of the Prison Litigation Reform Act. This statute prohibits a prisoner from proceeding in forma pauperis under certain circumstances. That provision provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

A prisoner who is not entitled to proceed in forma pauperis must pay the filing fee at the time he initiates his lawsuit, and his failure to do so warrants dismissal of his case without prejudice. *See* Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) (holding that "the proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed in forma pauperis pursuant to the provisions of § 1915(g)" because the prisoner "must pay the filing fee at the time he initiates the suit."); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001). The only exception is if the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004).

---

in this case.

        Second, to the extent Plaintiff's challenge to his 1994 conviction for robbery in Case Number 94-788 necessarily would undermine the validity of his conviction and confinement, the challenge should be barred by Heck v. Humphrey, 512 U.S. 477, 481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (prisoner cannot use a § 1983 action for damages to challenge the fact or duration of his confinement absent prior invalidation of conviction); Wilkinson v. Dotson, 544 U.S. 74, 81–82, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005) (reiterating that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."). Thus Plaintiff's claims for relief in connection with his criminal case, insofar as they would necessarily undermine the validity of his conviction, should be barred by Heck and its progeny.

Case No.: 3:13cv460/MCR/EMT

The court takes judicial notice of three civil rights actions previously filed by Plaintiff while he was incarcerated which were dismissed as frivolous or malicious. *See* Schmidt v. Fauchuex, No. 5:94cv50258/LAC/SMN (N.D. Fla. Oct. 5, 1994) (dismissing frivolous civil rights complaint filed by Plaintiff while incarcerated, pursuant to 28 U.S.C. § 1915(d)); Muder v. Wooten, No. 5:95cv50235 (N.D. Fla. Dec. 1, 1995) (dismissing Plaintiff, pursuant to 28 U.S.C. § 1915(d), from civil rights action filed while Plaintiff was incarcerated); and Schmidt v. Wade. No. 5:95cv50215/RV/SMN (N.D. Fla. Nov. 8, 1995) (dismissing as abusive of the judicial process, i.e., malicious, civil rights complaint filed by Plaintiff while incarcerated).[10] Therefore, Plaintiff should not be permitted to proceed in forma pauperis in the instant case, unless he qualifies under the "imminent danger of serious physical injury" exception of § 1915(g).

Circuit court cases have been helpful in determining what a prisoner with three strikes must show in order to be allowed to proceed in forma pauperis. According to the Eleventh Circuit, in Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004), "the issue is whether [the] complaint, as a whole, alleges imminent danger of serious physical injury." Accordingly, when determining whether a plaintiff has met his burden of proving that he is in imminent danger of serious physical injury, the court must look to the complaint, which must be construed liberally and the allegations of which must be accepted as true. *See id.*; Jackson v. Reese, 608 F.2d 159, 160 (5th Cir. 1979); McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002). General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g). *See* Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003). The plaintiff must allege and provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury," *id.*, and vague allegations of harm and unspecific references to injury are insufficient. White v. State of Colorado, 157 F.3d 1226, 1231 (10th Cir. 1998). A claim by a prisoner that he faced a past imminent danger

---

[10] A suit dismissed as frivolous or malicious pursuant to 28 U.S.C. § 1915(d), the predecessor statute to § 1915(e), constitutes a strike. Medberry v. Butler, 185 F.3d 1189, 1192 (11th Cir. 1999); Rivera v. Allin, 144 F.3d 719, 728–30 (11th Cir. 1998); Hernandez v. Ryan, 2010 WL 3447487 (S.D. Fla. 2010). Accordingly, Schmidt v. Fauchuex, Muder v. Wooten, and Schmidt v. Wade count as strikes under section 1915(g). Due to the age of the cases, imaged copies of the relevant documents are not available on the court's electronic docketing system. Thus, to confirm the precise nature of the dismissals, it was necessary for the court to order and review the original files from its archived records. Copies of the relevant documents are attached to this Report.

Case No.: 3:13cv460/MCR/EMT

is an insufficient basis to allow him to proceed in forma pauperis pursuant to the imminent danger exception. *See* Medberry, 185 F.3d at 1193 (holding that exception not triggered where threat of assault by other prisoners ceased to exist when plaintiff was placed in administrative confinement prior to filing of his complaint); *see also* Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002) (holding that "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate."). Moreover, "imminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed. *See* Abdul-Akbar v. McKelvie, 239 F.3d 307, 213 (3d Cir. 2001).

As outlined above, Plaintiff makes lengthy and detailed allegations concerning prior litigation in which he has engaged. None of his allegations state or imply that Defendants' conduct poses an imminent threat of serious physical injury to him. Therefore, Plaintiff does not qualify under the imminent danger exception to § 1915(g). Dismissal without prejudice of this action would therefore be warranted under § 1915(g). *See* Dupree, 284 F.3d at 1236 (prisoner who is not entitled to proceed in forma pauperis must pay the filing fee at the time he initiates the suit, and failure to do so warrants dismissal without prejudice); Vanderberg, 259 F.3d at 1324.[11]

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Ruling on Second Amended Complaint (doc. 34) is **DENIED**, as moot.

2. Plaintiff's Motion to Change Caption (doc. 37) is **GRANTED**. The clerk shall alter the docket to reflect that the named Defendants in this case are the Florida First District Court of Appeal, the Florida Supreme Court, and the State of Florida.

And it is respectfully **RECOMMENDED** that:

1. This action be **DISMISSED** without prejudice, as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

---

[11] At the time the court granted Plaintiff leave to proceed in forma pauperis the archived information establishing that Plaintiff had previously been assessed three strikes had not yet been retrieved. The court's withdrawing leave to proceed in forma pauperis at this time given the recently acquired information therefore would be warranted. In light of the alternative grounds for dismissal cited above, however, the court shall not do so.

Case No.: 3:13cv460/MCR/EMT

2. Additionally, or in the alternative, this action be **DISMISSED** pursuant to 28 U.S.C. § 1915(g).

3. The clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 1st day of December 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).